## Alexandre v Verizon N.Y.

2025 NY Slip Op 30976(U)

March 26, 2025

Supreme Court, New York County

Docket Number: Index No. 150773/2024

Judge: Emily Morales-Minerva

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:  **HON. EMILY MORALES-MINERVA**      PART      **42M**

*Justice*

-----------------------------------------------------------------------X

Alexandre, Gerda

Plaintiff,

- v -

Verizon New York Inc. et al

Defendant.

-----------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 150773/2024 |
| MOTION DATE | 05/02/2024 |
| MOTION SEQ. NO. | 001 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 3, 4, 5, 6, 7. 8, 9, 10, 11, 12, 13, 14

were read on this motion to/for          DISMISS          .

APPEARANCES:

    The Stephens Law Firm PLLC, New York, New York (Glendoval James Stephens Esq., of counsel) for plaintiff.

    Jackson Lewis LLP, New York, New York (Peter C. Moskowitz, Esq., of counsel) for defendants.

HON. EMILY MORALES-MINERVA:

In this action for gender discrimination and retaliation, defendant VERIZON NEW YORK, INC., employer of plaintiff GERDA ALEXANDRE moves, by notice of motion (seq. no. 001), pursuant to CPLR § 3211 (a)(5) and (7),[1] for an order dismissing the complaint. Plaintiff appears and opposes the motion.

---

[1] CPLR § 3211 (a) provides, as pertinent here, "A party may move for judgment dismissing one or more causes of action asserted against him on the ground that:
"(5) the cause of action may not be maintained because of arbitration and award, collateral estoppel, discharge in bankruptcy, infancy or other disability of the moving party, payment, release, res judicata, statute of limitations, or statute of frauds; or

**150773/2024  ALEXANDRE, GERDA vs. VERIZON NEW YORK INC. ET AL**
**Motion No. 001**

[* 1]

For the reasons set forth below, defendant's motion (seq. no. 001) is denied entirely.

BACKGROUND

Since 1988, plaintiff GERDA ALEXANDRE (employee) has served as an employee of defendant VERIZON NEW YORK, INC. (Verizon) (see New York State Court Electronic Filing System [NYSCEF] Doc. No. 001, Complaint). Her work titles have included Customer Service Representative and, most recently, Telecommunication Technician Associate (id.). After at or around 31 years of her employment, in September 2019, Verizon assigned Manual Da Costa (Verizon Supervisor) as employee's supervisor (see id.).

Employee alleges that, within a month of working under his supervision, she observed Verizon Supervisor "watch[ing] a woman's backside intensely" (see id. at ¶ 14). At that time, employee contends that Verizon Supervisor smiled and winked at employee, saying "'Nice butt'" (id.). Employee states that, thereafter, Verizon Supervisor made "inappropriate comments" about employee's body (id. at ¶ 15).

Employee specifies that, "[w]henever [she] went to [Verizon Supervisor's] office for personal protective equipment," he

---

"(7) the pleading fails to state a cause of action."

**150773/2024   ALEXANDRE, GERDA vs. VERIZON NEW YORK INC. ET AL**                    **Page 2 of 17**
**Motion No.  001**

opined on, among other things, "how well she [employee] dressed, or how well she [employee] smelled" (see id. at ¶ 16).

According to employee's complaint -- at least two to three times weekly -- Verizon Supervisor engaged in this type of behavior toward her. During these times, Verizon Supervisor allegedly (1) complained to employee that she did not like him, (2) licked his lips and winked at her, and (3) stated to employee "'I love your smell'" and that employee was "'sexy'" (see id. at ¶ 16 -19).

Employee states that, at or around 2020, she reported these incidents to her union representative, non-party Bernard Burgess and to her colleague, non-party Paul Townsley (see id. at ¶ 20). Further, employee states that, in the summer of 2020, she "told Da Costa [Verizon Supervisor] that she was not comfortable with" his personal comments (id. at ¶ 21).

However, according to employee, by Fall 2020, Verizon Supervisor increased the visits to her workstation to almost daily visits; employee states that, on each of those visits, Verizon Supervisor made similar comments to those described above (see id. at ¶ 22). According to employee, Verizon Supervisor did not make the same number of visits to her colleague Townsley (see (id. at ¶ 21).

The complaint further sets forth that, in October of 2020, Verizon Supervisor asked employee: "'Are you with your

[* 3]

husband?'" (see id. at ¶ 24). Employee contends that she answered in the affirmative, and Verizon Supervisor stated: "I'd like to take you out. Would you go out with me?" (see id. at ¶ 24). According to employee, she immediately declined Verizon Supervisor's request, saying to him that it was "'not work-related'" and asking "'why are you asking me stuff like this?'" (id. at ¶ 24).

After this exchange, employee alleges that Verizon Supervisor stopped commenting on her appearance and began criticizing her productivity (see id. at ¶ 25-27). Employee alleges that Verizon Supervisor also stopped granting her requests for vacation days and started to require her to make formal requests for time off (see id. at ¶ 25-27).

Further, employee also alleges that, after declining his advance, Verizon Supervisor denied her overtime pay, despite approving overtime pay for her colleague Paul Townsley (see id. at ¶ 33-34). According to employee, this constituted disparate treatment as she worked the same shift, on the same date, and at the same time as Paul Townsley (id.).

Consequently, on or around January 2021, employee "filed a grievance" with Verizon complaining about Verizon Supervisor (see id. at ¶ 35). Employee contends that she also "sent two e-mails concerning the unpaid hours to Da Costa [Verizon

150773/2024 ALEXANDRE, GERDA vs. VERIZON NEW YORK INC. ET AL
Motion No. 001

Page 4 of 17

4 of 17

[* 4]

Supervisor], Da Costa's supervisor [non-party] Betty Diaz, and Diaz's supervisor [non-party] Carmel Bermudez" (id. ¶ 38).

Thereafter, Verizon Supervisor scheduled a meeting between himself, employee, her chief union steward [non-party] Joey Marks and another supervisor, which took place on January 26, 2021 (see id. at ¶ 38). Employee alleges that, during said meeting, Verizon Supervisor asked questions that she could not answer simply, despite his instruction that she answer them with either a "yes or no" (id. at ¶ 40). According to employee, Verizon Supervisor began yelling at her, and employee's union steward "terminated the meeting, taking Alexandre [employee] out of the meeting" (id. at ¶ 41).

Employee contends that, the next day, January 27, 2021, Verizon Supervisor visited her workstation, "chest-bumped" her, and "pushed her shoulder forcefully with his hand;" he also allegedly "yelled" at employee, calling her a "'nasty lady,' a 'liar,' and 'disgusting'" (id. at ¶ 46-48). Employee contends she left work afraid for her safety and for her job (id. at ¶ 50-51).

Immediately thereafter, on January 28, 2021, Verizon transferred employee involuntarily from her work site at 140 West Street, New York, NY, to a work site at 204 Second Avenue, New York, NY (id. at ¶ 51). Employee states, at this new location, Verizon isolated from her colleagues, who performed

**150773/2024  ALEXANDRE, GERDA vs. VERIZON NEW YORK INC. ET AL**      Page 5 of 17
**Motion No. 001**

5 of 17

[* 5]

her same duties, assigning her a workspace on a separate floor with only one other employee, who worked from home; employee also alleges that Verizon gave her "no duties to perform," divesting her of all usual tasks (id. at ¶ 57 and 62). Shortly after relocating employee, Verizon issued employee a written warning for "failing to cooperate with an investigation" and for walking out of the meeting with Verizon Supervisor (id. at ¶ 60).

Employee then filed a claim with the Equal Employment Opportunity Commission ("EEOC") against defendant Verizon (see NYSCEF Doc. No. 007, exhibit B, EEOC Charge of Discrimination). The EEOC dismissed employee's claim, providing, among other things, that the dismissal "does not mean the claims have no merit [and] does not certify that the [Verizon] is in compliance with the statutes (see NYSCEF Doc. No. 008, Dismissal and Notice of Rights, dated May 24, 2021 [emphasis added]).

The dismissal and notice further explicitly states:

> "The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge. Plaintiff also filed a successful workers compensation claim against defendant Verizon for mental injury, resulting in compensation for psychiatric and psychological care"

(id. [emphasis added]; see also NYSCEF Doc. No. 001, Complaint, at ¶ 73).

150773/2024  ALEXANDRE, GERDA vs. VERIZON NEW YORK INC. ET AL
Motion No. 001

Page 6 of 17

6 of 17

[* 6]

Months later, in or around July 2021, Verizon returned employee to her initial worksite. Verizon Supervisor was no longer there, and it is not clear whether he remained with the company. However, employee has continued her employment with Verizon from 1988 to the present.

Meanwhile, on or around January 26, 2024, employee commenced the instant action against defendant Verizon and Verizon Supervisor, alleging gender discrimination and retaliation under both Executive Law § 296 ("New York State Human Rights Law" or "NYSHRL")[2] and Administrative Code of the City of New York § 8-107 ("New York City Human Rights Law" or "NYCHRL").[3] However, employee stipulated to discontinue this

---

[2] Section 296 of the Executive Law provides, as pertinent here:
"(1) It shall be an unlawful discriminatory practice:
"(a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, citizenship or immigration status, sexual orientation, gender identity or expression, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or status as a victim of domestic violence, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."
"(7) It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint."

[3] Section 8-107 of the Administrative Order provides, as pertinent here, "(1) shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual and reproductive health decisions, sexual orientation, uniformed service, height, weight, or immigration or citizenship status of any person: [] (3) To discriminate against such person in compensation or in terms, conditions or privileges of employment."
"(7) It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in

**150773/2024 ALEXANDRE, GERDA vs. VERIZON NEW YORK INC. ET AL**
**Motion No. 001**

Page 7 of 17

[* 7]

action, without prejudice, against Verizon Supervisor, leaving Verizon as the sole defendant (see NYSCEF Doc. No. 02, Stipulation, dated March 22, 2024).

Verizon now moves, by motion (seq. no. 001), pursuant to CPLR 3211 (a) (5) and (a) (7), for an order, dismissing employee's complaint, in part, as (1) time-barred to the extent the allegations pre-date January 26, 2021 and, in part, as (2) failing to state a cause of action to the extent that the allegations are timely (see NYSCEF Doc. No. 004, Memorandum of Law in Support of Motion to Dismiss). Employee opposes the motion entirely.

ANALYSIS

*MOTION TO DISMISS*

*Statute of Limitations*

Pursuant to CPLR § 3211 (a)(5), a "party may move for judgment dismissing one or more causes of action asserted against [them] on the ground that [] the cause of action may not be maintained because of the statute of limitations."

Generally, the statute of limitations for claims brought under the NYSHRL and the NYCHRL is three years (see CPLR

---

any manner against any person because such person has (i) opposed any practice forbidden under this chapter."

**150773/2024  ALEXANDRE, GERDA vs. VERIZON NEW YORK INC. ET AL**
**Motion No. 001**

**Page 8 of 17**

§ 214[2]; Admin Code of City of NY § 8-502[d]; see also St. Jean Jeudy v City of New York, 142 AD3d 821, 822 [1st Dept 2016]). Since plaintiff filed her complaint in this action on January 26, 2024, alleging discriminatory acts which occurred before January 26, 2021, the causes of action based on those acts are facially untimely (see St. Jean Jeudy, 142 AD3d at 822).

However, the continuing violation doctrine permits consideration of all actions relevant to a discrimination claim, including those that would otherwise be time-barred, so long as such actions are part of a single continuing pattern of unlawful conduct extending into the limitations period immediately preceding the filing of the complaint (see James v City of New York, 144 AD3d 466, 467 [1st Dept 2016] [emphasis added]; see also Ferraro v New York City Dept. of Educ., 115 AD3d 497, 498 [1st Dept 2014][finding that to the extent any of the complained acts are part of a single continuing pattern of unlawful, discriminatory conduct extending into the limitations period, they would not be time-barred]).

Indeed, the First Department recently confirmed that "continuing acts of discrimination within the statutory period will toll the running of the statute of limitations until such time as the discrimination ends" (Ctr. for Indep. of Disabled v Metro. Transportation Auth., 184 AD3d 197, 201 [1st Dept 2020]). Further, in the pre-answer stage of a discrimination action --

150773/2024  ALEXANDRE, GERDA vs. VERIZON NEW YORK INC. ET AL
Motion No. 001

Page 9 of 17

[* 9]

as here -- it cannot be determined, as a matter of law, that alleged acts, if proven, were not part of a single, continuing pattern of unlawful conduct (see Ferraro, 115 AD3d at 497-498; see Petit v Dept. of Educ. of City of New York, 177 AD3d 402, 403 [1st Dept 2019] [providing "we cannot say, as a matter of law, that these acts, if proven, were not part of a single continuing pattern of unlawful conduct"]).

Applying these principles here, the court denies Verizon's pre-answer application to dismiss employee's complaint as time barred to the extent that it is based on allegations pre-dating January 26, 2021.

*Failure to State a Cause of Action*

"When deciding a motion to dismiss, the court must 'accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory'" (Farage v Associated Ins. Mgt. Corp., 2024 NY Slip Op 05875, 2024 NY LEXIS 1920, *6 [Ct of Appeals], quoting Goldman v Metropolitan Life Ins. Co., 5 NY3d 561, 570-571 [2005] and citing Leon v Martinez, 84 NY2d 83, 87-88 [1994]).

Further, in assessing a motion seeking dismissal for failure to state a cause of action, "the criterion is whether

150773/2024 ALEXANDRE, GERDA vs. VERIZON NEW YORK INC. ET AL
Motion No. 001

Page 10 of 17

the proponent of the pleading has a cause of action, not whether [they have] stated one" (Eccles v Shamrock Capital Advisors, LLC, 42 NY3d 321, 342-343 [2024] [internal quotation marks and citation omitted]). Indeed, "'whether a plaintiff can ultimately establish its allegations is not part of the calculus in determining a motion to dismiss'" (id., citing EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 19 [2005]).

"Whatever an ultimate trial may disclose as to the truth of the allegations, . . . a court is to take them as true and resolve all inferences which reasonably flow therefrom in favor of the pleader" (Sander v Winship, 57 NY2d 391, 394 [1982]; see also Merril Lynch, Pierce, Fenner & Smith, Inc. v Wise Metals Group, LLC, 19 Ad3d 273, 275 [1st Dept 2005]).

*Causes of Action for Gender Based Discrimination*

To plead a cause of action for gender discrimination under the NYSHRL and NYCHRL, a plaintiff's factual allegations must show "(1) that he/she is a member of a protected class, (2) that he/she was qualified to hold the position, (3) that he/she was subjected to an adverse employment action (under State HRL) or he/she was treated differently or worse than other employees (under City HRL), and (4) that the adverse or different treatment occurred under circumstances giving rise

150773/2024 ALEXANDRE, GERDA vs. VERIZON NEW YORK INC. ET AL
Motion No. 001

Page 11 of 17

11 of 17

to an inference of discrimination" (Harrington v City of New York, 157 AD3d 582, 584 [1st Dept 2018] citing Santiago-Mendez v City of New York, 136 AD3d 428 [1st Dept 2016]).

Here -- viewing employee's allegations in their most favorable light and according them every possible favorable inference -- she sufficiently sets forth this claim. No dispute exists that employee is a member of a protected class, or that she was qualified for her position (see NYSCEF Doc. No. 004, Defendant's Memorandum of Law).

Further, employee states that, after she rejected the advances of Verizon Supervisor, he denied her vacation requests and overtime pay, and he criticized her work. Among other things, employee also sets forth that, thereafter, Verizon involuntarily transferred employee to a new office location, isolated her, from her colleagues and assigned her no work duties (see generally Bond v New York City Health and Hosps. Corp., 215 AD3d 469, 470 [1st Dept 2023] [finding plaintiff's assertions that, after she rejected her supervisor's sexual advances, she was unjustifiably criticized for her work product and attendance by her supervisors, and was stripped of her assignments, permits a finding that she was treated "less well" based on her gender]; see also Crookendale v New York City Health and Hosps. Corp., 175 AD3d 1132, 1132 [1st Dept 2019] [finding that plaintiff's description of being touched and

150773/2024 ALEXANDRE, GERDA vs. VERIZON NEW YORK INC. ET AL
Motion No. 001

Page 12 of 17

12 of 17

complimented inappropriately was sufficient to demonstrate that she was treated "less well" than her male colleagues because of her gender]).

To the extent Verizon argues that employee fails to state actionable discrimination claims because the court may only consider allegations "within the limitations period" -- this argument falls short. Employee is not precluded from using time-barred acts as background evidence in support of timely claims (see Petit, 177 AD3d at 403, citing Jeudy, 142 AD3d at 823).

*Causes of Action for Retaliation*

"Under both the State and City Human Rights Laws, it is unlawful to retaliate against an employee for opposing discriminatory practices" (Forrest v Jewish Guild for the Blind, 3 NY3d 295, 312 [2004] citing Executive Law § 296 [7]; Administrative Code § 8-107 [7]).

In order for plaintiff to make out a claim of retaliation under the NYSHRL, the complaint must allege that (1) plaintiff engaged in a protected activity by opposing conduct prohibited thereunder; (2) defendant was aware of that activity; (3) plaintiff was subject to an adverse action; and (4) there was a causal connection between the protected activity and the adverse action (Forrest, 3 NY3d at 313; Franco v Hyatt Corp.,

150773/2024 ALEXANDRE, GERDA vs. VERIZON NEW YORK INC. ET AL
Motion No. 001

Page 13 of 17

[* 13]

13 of 17

189 AD3d 569, 571 [1st Dept 2020]). The NYCHRL employs a similar test, except that plaintiff need not establish an adverse action; instead, plaintiff must allege an action that "is reasonably likely to deter a person from engaging in protected activity" (id.; see Albunio v City of New York, 67 AD3d 407, 408 [1st Dept 2009] aff'd 16 NY3d 472 [2011]).

"Protected activity" refers to actions taken to protest or oppose ,statutorily prohibited discrimination (see Albunio, 16 NY3d at 478-479). "Protected activity" is one that consists of opposing or complaining about unlawful discrimination; an act complaining of conduct other than unlawful discrimination is not deemed to be a protected activity (see Forrest, 3 NY3d at 313; see also Witchard v Montefiore Med. Ctr., 103 AD3d 596, 596 [1st Dept 2013]).

Here, again -- viewing employee's allegations in their most favorable light and according them every possible favorable inference -- employee sufficiently states a cause of action for retaliation. Employee contends that both in the summer of 2020 and in October of 2020, she complained directly to Verizon Supervisor about his comments concerning her body. Further, on January 26, 2021, employee attended a meeting with her union representative and Verizon Supervisor where she again complained about his treatment of her.

**150773/2024  ALEXANDRE, GERDA vs. VERIZON NEW YORK INC. ET AL**
**Motion No. 001**

**Page 14 of 17**

14 of 17

The complaint does not specify that employee stated at that meeting that Verizon Supervisor denied her overtime because she rejected her sexual advances. However, such an explicit statement is not required to withstand a motion to dismiss in this context (see generally Albunio, 16 NY3d at 472, 479 [2011] [restating that the court must construe the City's Human Rights Law, "broadly in favor of discrimination plaintiffs. . . (and) interpret the word 'opposed'" -- as set forth in Administrative Code § 8-107 (7) -- to include implicit opposition, even where a plaintiff "neither filed a discrimination complaint nor explicitly accused anyone of discrimination before" the alleged retaliation]). Employee alleges that the meeting concerned her not being entitled to overtime pay, despite her colleague Paul Townsley being paid overtime for working the same shift, on the same date, and same time as she did.

Given the governing standard on a motion to dismiss for failure to state a cause of action, employee also sufficiently pleads that, after the grievance filing and the meeting on January 26, 2021, Verizon engaged in retaliatory acts. The complaint sets forth that -- within two days of said meeting -- Verizon transferred her to a less desirable work location, isolated her from colleagues, and dispossessed her of work responsibilities. In addition, shortly thereafter, Verizon issued employee a warning letter, and Verizon Supervisor chest-

150773/2024   ALEXANDRE, GERDA vs. VERIZON NEW YORK INC. ET AL                Page 15 of 17
Motion No. 001

15 of 17

[* 15]

bumped, pushed and yelled at employee (see generally Williams v New York City Hous. Auth., 61 AD3d 62 [1st Dept 2009][finding that being assigned duties outside of or beneath one's normal work tasks may deter someone from making a complaint); see also Kelly v R.A. Cohen & Assoc., 2017 NY Slip Op 30873[U] [Sup Ct NY Cnty 2017][Kelly Levy, J.S.C.][finding that retaliatory acts of threatening plaintiff with termination, change in job responsibilities and work schedule, and issuing warning letter were materially adverse]). Lastly, plaintiff sufficiently alleges that these adverse actions have a causal connection to her opposition, as they occurred almost immediately after the meeting (see NYSCEF Doc. No. 001, Complaint, ¶ 39, 47, 51).

Accordingly, it is hereby

ORDERED that defendant VERIZON NEW YORK, INC.'s motion to dismiss (seq no. 001) the complaint is denied entirely; it is further

ORDERED that defendant VERIZON NEW YORK, INC., shall serve on plaintiff GERDA ALEXANDRE a copy of this decision and order with notice of entry within 10 days from this date, March 26, 2025; it is further

ORDERED that defendant VERIZON NEW YORK, INC., shall file and serve an answer to the complaint within 20 after service of a copy of this decision and order with notice of entry; and it is further

**150773/2024  ALEXANDRE, GERDA vs. VERIZON NEW YORK INC. ET AL**
**Motion No.  001**

Page 16 of 17

[* 16]

16 of 17

ORDERED that the parties shall appear for a preliminary conference before Justice Emily-Morales Minerva in Part 42M at 111 Centre Street New York, NY 10013, in Courtroom 574 on June 4, 2025, at 12:00 P.M.

THIS CONSTITUTES THE DECISION AND ORDER OF THE COURT.

03/26/2025
_____
DATE

_Emily Morales Minerva_
EMILY MORALES-MINERVA, J.S.C.

CHECK ONE:            ☐ CASE DISPOSED        ☐ DENIED        ☒ NON-FINAL DISPOSITION
                     ☐ GRANTED                              ☐ GRANTED IN PART        ☐ OTHER
APPLICATION:          ☐ SETTLE ORDER                         ☐ SUBMIT ORDER
CHECK IF APPROPRIATE: ☐ INCLUDES TRANSFER/REASSIGN            ☐ FIDUCIARY APPOINTMENT  ☐ REFERENCE

**150773/2024  ALEXANDRE, GERDA vs. VERIZON NEW YORK INC. ET AL**
**Motion No. 001**

Page 17 of 17