Farmer v Mizuho Sec. USA LLC

2026 NY Slip Op 02920

May 12, 2026

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

Kaitlin Farmer, Appellant,

v

Mizuho Securities USA LLC, Respondent.

Decided and Entered: May 12, 2026

Index No. 151348/24|Appeal No. 6568|Case No. 2025-06032|

Before: Renwick, P.J., Friedman, Kapnick, Pitt-Burke, O'neill Levy, JJ.

Leeds Brown Law, P.C., Carle Place (Rick Ostrove of counsel), for appellant.

Epstein Becker & Green, P.C., New York (Edward M. Yennock of counsel), for respondent.

[*1]

Order, Supreme Court, New York County (Paul A. Goetz, J.), entered on or about June 27, 2025, which, to the extent appealed from as limited by the briefs, granted defendant's motion under CPLR 3211(a)(5) and (7) to dismiss plaintiff's claims for gender discrimination and hostile work environment under the New York State Human Rights Law (State HRL) and the New York City Human Rights Laws (City HRL), unanimously reversed, on the law, with costs, the motion denied, and the claims for gender discrimination and hostile work environment reinstated.

Plaintiff's claims for gender discrimination and hostile work environment stem from allegations that from June 2020 until early 2021, defendant, a brokerage firm where plaintiff was a trader, assigned her a smaller percentage of the market and a lower risk limit as compared with her male colleagues. She further alleges that in late 2019, one of her supervisors made disparaging remarks about her appearance and suggested that she used her gender to gain favor with male colleagues. After plaintiff complained to human resources, her supervisor announced that she would "get [plaintiff] fired" and told others that plaintiff's successes at the firm were attributable to cheating. Plaintiff repeatedly complained to human resources and her other supervisors about both the disparities and her supervisor's treatment of her. On February 10, 2021, plaintiff requested options for moving to another role within the firm. The next day, February 11, 2021, plaintiff was locked out of her computer and told by her supervisor and human resources that they accepted her resignation. Plaintiff denies leaving her employment voluntarily.

Affording plaintiff the benefit of every favorable inference on this pre-answer motion to dismiss under CPLR 3211(a)(5) and (7) and applying the lenient notice-pleading standard afforded to discrimination claims, the complaint adequately pleads a claim for gender discrimination under both the State HRL (Executive Law § 296) and the City HRL (Administrative Code of City of NY § 8-107; see Eustache v Board of Ed. of the City Sch. Dist. of the City of N.Y, 228 AD3d 482, 483 [1st Dept 2024]). The allegations that plaintiff was treated less favorably than her male counterparts, if proven, may give rise to an inference of discrimination (see Keenan v Bloomberg L.P., 244 AD3d 622, 623 [1st Dept 2025]; Harrington v City of New York, 157 AD3d 582, 584 [1st Dept 2018]). Given the allegations that defendant terminated plaintiff following months of consistently disparate treatment, plaintiff adequately pleads a causal connection between the disparate treatment and the termination. In addition, plaintiff's allegation that defendant falsely characterized its decision to end her employment, stating that it was a voluntary departure, further raises an inference of discrimination (see Bennett v Health Mgt. Sys., Inc., 92 AD3d 29, 43 [1st Dept 2011], lv denied 18 NY3d 811 [2012]; cf. Harrington, 157 AD3d at 584).

[*2]

The hostile work environment cause of action should not have been dismissed as untimely. Although plaintiff's February 2021 termination is the only act occurring within the three-year limitations period governing claims under the State and City HRLs (see CPLR 214[2]; New York City Administrative Code § 8-502[d]) the complaint, as pleaded, sufficiently alleges that the termination was the culmination of a single continuing pattern of discriminatory or retaliatory conduct extending into the limitations period, thus linking the wrongful conduct to the termination. "It cannot be said as a matter of law that [the] alleged discriminatory and retaliatory acts . . . were not part of a single continuing pattern of unlawful conduct extending into the three-year period immediately before the filling of the complaint" (Keenan, 244 AD3d at 623).

We reject defendant's argument that for the purposes of the continuing violation doctrine, plaintiff's termination should be considered legally distinct from other kinds of unequal gender-based treatment. The City HRL focuses on unequal treatment regardless of whether or not the defendant has engaged in tangible conduct, such as hiring and firing (see Williams v New York City Hous. Auth., 61 AD3d 62, 79 [1st Dept 2009], lv denied 13 NY3d 702 [2009]). Thus, under the City HRL, the continuing violation doctrine can operate to link untimely allegations of unequal treatment to timely allegations of unequal treatment, such as plaintiff's termination (see Jeudy v City of New York, 142 AD3d 821, 823 [1st Dept 2016]).

Moreover, in 2019, the State HRL was amended to align its standards with the City HRL, providing that the State HRL's provisions "shall be construed liberally for the accomplishment of the remedial purposes thereof" (Executive Law § 300). Thus, the State HRL should likewise be construed not to distinguish between discrete acts of discrimination and other forms of unequal treatment for purposes of the continuing violation doctrine (see Executive Law § 296[h], L 2019, ch 160, § 2; see also Syeed v Bloomberg L.P., 41 NY3d 446, 451 [2024]).

THIS CONSTITUTES THE DECISION AND ORDER

OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.

ENTERED: May 12, 2026